IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| MICHAEL L. JOHN<br>KATHY M. JOHN, | : | BANKRUPTCY NO.: 5:08-bk-52505-JJT |
| DEBTORS | : | |
| CHARLES J. DeHART, III,<br>STANDING CHAPTER 13 TRUSTEE | : | {**Nature of Proceeding**: Trustee's Motion to Dismiss Case for Failure to Obtain Credit Counseling (Doc. #13)} |
| MOVANT | : | |
| vs. | : | |
| MICHAEL L. JOHN<br>KATHY M. JOHN, | : | |
| RESPONDENTS | : | |

# OPINION[1]

Overshadowing what otherwise is a successful completion of a Chapter 13 Plan leading to a Final Report filed by the Chapter 13 Trustee is an open Trustee's Motion to Dismiss filed several years ago based on Debtors' failure to comply with the credit counseling requirements of 11 U.S.C. § 109(h). The Debtors and Chapter 13 Trustee have framed the issue as to how to compute the relevant time period provided in 11 U.S.C. § 109(h)(1).

Briefly, the facts are as follows. The Debtors filed their voluntary Chapter 13 Petition on September 8, 2008. On the filing date, both individual Debtors filed a Certificate of Counseling indicating they were provided counseling pursuant to the provisions of 11 U.S.C. § 109(h) on March 11, 2008. Simply stated, the Trustee argues that the credit counseling fell outside of the

---

[1] Drafted with the assistance of Richard P. Rogers, Law Clerk.

180-day period ending on the date of the filing of the petition and, therefore, was untimely under the provisions of 11 U.S.C. § 109(h)(1). The Debtors counter-arguing that the credit counseling requirements were met under that Code section because of the application of Federal Rule of Bankruptcy Procedure 9006(a). By applying Federal Rule of Bankruptcy Procedure 9006(a), the credit counseling was timely because the last day of this operable period fell on a weekend, thus extending the time to the next business day ending on September 8, 2008. The fundamental difference in the approach taken by the parties to this issue is whether the applicable time is computed from the date of the filing of the Petition backwards or whether the time is computed forward from the date of the receipt of the credit counseling.

The Trustee argues that the 180-day period begins on the date of the filing of the Petition, September 8, 2008. Counting backwards to the date credit counseling was received on March 11, 2008, is more than 180 days from the filing date and, therefore, the credit counseling is untimely under the statutory framework. On the other hand, the Debtor asserts that the date of focus should be the date of the receipt of the credit counseling and then counting forward 180 days when determining whether the statutory period under Section 109(h)(1) has been satisfied.

11 U.S.C. § 109(h)(1) provides as follows:

> (h)(1) Subject to paragraphs (2) and (3), and notwithstanding any other provision of this section other than paragraph (4) of this subsection, an individual may not be a debtor under this title unless such individual has, during the 180-day period ending on the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis.

Section 109(h)(1) does not read the way it did in 2008, when the Debtors filed their

Chapter 13 Petition. At the time that the Debtors filed their Chapter 13 Petition, Section 109(h) read as follows:

> (h)(1) Subject to paragraphs (2) and (3), and notwithstanding any other provision of this section, an individual may not be a debtor under this title unless such individual has, during the 180-day period *preceding* the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis. (Emphasis ours.)

The Bankruptcy Technical Corrections Act of 2010, Pub. L.No. 111-327 (2010), amended the wording by taking out the word "preceding" and changing it to "ending on." The Technical Amendment clarified that the credit counseling briefing may occur on the same date that the bankruptcy petition is filed. 2 COLLIER ON BANKRUPTCY ¶ 109.9[1] at 109-54 n.5 (Alan N. Resnick & Henry J. Sommer eds., 16th ed), *accord*; *In re Fiorillo*, 455 B.R. 297, 301-302 n.4 (D.Mass. 2011).

Neither party has briefed whether the instant issue is resolved by application of the current reading of Section 109(h)(1) or its predecessor. While the Court has previously addressed the retroactive or prospective application of the enactment of a statute on a parties' rights after the filing of the petition, (see *Harvey v. Lewandowski* (*In re Lewandowski*), 325 B.R. 700 (Bkrtcy. M.D.Pa. 2005)), it has not addressed the effect of a "correction" to an Amendment of the Bankruptcy Code on a case filed prior to the "correction." The Bankruptcy Technical Corrections Act contains neither an effective date nor does it instruct as to its application. Absent a manifest injustice or an apparent intent to the contrary, courts will generally apply the law as it exists when a decision is made. *Bradley v. School Bd. of City of Richmond*, 416 U.S.

696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). As mentioned above, I addressed a like matter earlier in our case of *Harvey v. Lewandowski* (*In re Lewandowski*), wherein I wrote the following:

> The Supreme Court addressed this issue in <u>Landgraf v. USI Film Prod.</u> with respect to a provision in Title VII of the Civil Rights Act of 1964. <u>See</u> 511 U.S. 263 (1994). In <u>Landgraf</u>, the Court reconciled two potentially inconsistent rules of statutory construction:
>> The first is the rule that "a court is to apply the law in effect at the time it renders its decision," <u>Bradley</u>, 416 U.S., at 711, 94 S.Ct., at 2016. The second is the axiom that "[r]etroactivity is not favored in the law," and its interpretive corollary that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." <u>Bowen</u>, 488 U.S., at 208, 109 S.Ct., at 471.
>
> <u>Id.</u> at 264.
> The Supreme Court went on to hold that whenever a question concerning the temporal reach of a newly enacted statute in a pending case is raised, courts must engage in a two-step analysis:
>> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increased a party's liability for past conduct, or imposed new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.
>
> <u>Id.</u> at 280.
> The Supreme Court had cause to readdress the <u>Landgraf</u> analysis in <u>Lindh v. Murphy</u> and added an additional step:
>> In determining whether a statute's terms would produce a retroactive effect, however, and in determining a statute's temporal reach generally, our normal rules of construction apply. Although <u>Landgraf</u>'s default rules would deny application when a retroactive effect would otherwise result, other construction rules may apply to remove even the possibility of retroactivity (as by rendering the statutory provision wholly inapplicable to a particular case) . . . .

521 U.S. 320, 326 (1997); see also Matthews v. Kidder, Peabody & Co., Inc., 161 F.3d 156, 160 (3d Cir. 1998). "Thus, the Supreme Court held that if a congressional intent to *not* apply a statue retrospectively can be discerned, the courts are to follow that intent, without regard to whether the statute has retroactive effect. Underlying this new step in the analysis was the traditional presumption against retroactivity." Matthew, 161 F.3d at 161. Simply stated, if an intent to apply the statute prospectively can be found, a court need not bother with discerning whether the statute has retroactive effect. See id. at 162.

With regard to the present case, this Court must ascertain under the first step of the Landgraf/Lindh analysis whether Congress expressly prescribed the proper reach of § 523(a)(19). A thorough reading of § 523(a)(19) fails to expose any express congressional directive that its temporal reach is to be measured either retroactively *or* prospectively.

The second step involves an examination, under normal rules of statutory construction, for evidence of a congressional intent to only apply the statute prospectively. The legislative history associated with this provision lacks any indication that § 523(a)(19) was only to receive prospective treatment. Instead, the Section-by-Section Analysis of the Corporate and Criminal Fraud Accountability Act, which is included in the legislative history of the Sarbanes-Oxley Act, voices a clear congressional intention that § 523(a)(19) should apply "to the maximum extent possible . . . to existing bankruptcies." See 148 Cong. Rec. at S7418.

Lastly, the final step in the Landgraf/Lindh analysis requires consideration of the retroactive effect that application of § 523(a)(19) would have in Mr. Lewandowski's bankruptcy. A statute is deemed retrospective if "it would impair rights a party possessed when he acted, increased a party's liability for past conduct, or imposed new duties with respect to transactions already completed." See Landgraf, 511 U.S. at 280. The issue of retroactivity gives rise to an issue of fairness and may raise questions of constitutionality.[n.5 Constitutional restrictions on retroactive legislation are articulated in several provisions: *Ex Post Facto* Clauses (U.S. Const. art. I, § 9, cl. 3 & art. I, § 10, cl. 1); Takings Clause (U.S. Const. amend. V); Prohibition on "Bills of Attainder" (U.S. Const. art. I, §§ 9-10); & the Due Process Clause (U.S. Const. amend. V& XIV).] However, absent a violation of a constitutional provision, "the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." See id. at 267. The Supreme Court has held in specific instances that even absent specific legislative authorization, application of an intervening statute that authorizes or affects the propriety of prospective relief, confers or ousts jurisdiction or changes procedural rules in suits arising before their enactment does not raise concerns of retroactivity,. See id. at 273-75 (citations omitted).

*Harvey v. Lewandowski* (*In re Lewandowski*), 325 B.R. at 705.

Applying the *Landgraf/Lindh* analysis, I find that there was no ascertainable intent by Congress as to whether the temporal reach of the technical corrections should be measured either retroactively or prospectively. I further find no evidence of a Congressional intent to only apply the statute prospectively. Lastly, I find that none of the Debtors' rights will be impaired by a retroactive application of the current language found in the Code. Therefore, I will apply the present reading of 11 U.S.C. § 109(h) to the controversy before the Court.

Regardless of which statutory reading is applied, however, the result is the same. Initially, I note that I agree with the majority of Courts that Section 109(h) is not jurisdictional. See *In re Fiorillo*, 455 B.R. 297 (D.Mass. 2011) citing *Adams v. Zarnel* (*In re Zarnel*), 619 F.3d 156, 169 (2d Cir.2010); *In re Amir*, 436 B.R. at 21; *Mendez v. Salven* (*In re Mendez*), 367 B.R. 109, 116–18 (9th Cir. BAP 2007); *see also In re Mattingly*, 2008 WL 2559378, at *1 (treating § 109(h) as nonjurisdictional); *In re Falcone*, 370 B.R. at 467 (adopting the reasoning of *In re Tomco*, 339 B.R. 145 (Bankr.W.D.Pa.2006), and concluding that § 109(h) is nonjurisdictional).

Pivotal to resolution of the instant issue is determining whether the operative date is the date of the filing of the petition and counting backward or the date on which the credit counseling was obtained by the Debtors and counting forward. The Trustee, citing the case of *Matter of Nelson Co.*, 959 F.2d 1260 (3d Cir. 1992), a 547 preference action which concluded the date of the filing of the petition is the focal point, maintains that the operative date is the date of the filing of the petition.

Countering the *Matter of Nelson* case, *supra*, the Debtors are relying on the case of *In re Smith*, 96 F.3d 800 (6th Cir. 1996), in which the Court wrote that "Rule 9006 should apply only to periods calculated by counting forward from the occurrence of some event." *Id.* at 802. The

*Smith* Court indicates that the Third Circuit (*Matter of Nelson*) disagreed with its position and has used Rule 9006 in situations where it extended the time period backward from the date of the filing of the petition. Regardless of whether I agree with the position of the Sixth Circuit, I am obliged to follow the rulings of the Third Circuit. In that regard, I find that Rule 9006(a) is applicable to § 109(h), and the period will be calculated backwards from the date of the petition. In this case, the application of the extension periods provided by Rule 9006(a) do not apply because the applicable ending point fell on a business day and, therefore, no extension is warranted under the instant facts.

Other Courts have found the requirement to have the credit counseling run backwards from the date of the filing of the petition. See *In re Crawford*, 420 B.R. 833 (Bktcy. D.N.M. 2009); *In re Meng*, 2010 WL 1329397 (Bktcy. D.S.D. 2010). I embrace the findings of the *Crawford* and *Meng* Courts and also find that the credit counseling requirement runs backwards from the date of the filing of the petition. The natural progression of that finding is a finding that the Debtors did not satisfy the statutory requirements of § 109(h).

The remaining question I ask is whether I have any discretion other than to dismiss the underlying bankruptcy case. In other words, may I use my discretion and exercise equitable powers granted to me under 11 U.S.C. § 105(a) to excuse the Debtors' non-compliance with the strict timing requirements of § 109(h). The *In re Fiorillo* Court, *supra*, citing *In re Borges*, 440 B.R. 551 (Bkrtcy. D.N.M. 2010), writes that the majority of courts have held that mandatory dismissal is the appropriate remedy in this case. I find that the statutory language involved is not ambiguous, and in such cases, the function of the Court would normally be to enforce it according to its terms. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct.

1026, 103 L.Ed.2d 290 (1989). Had I acted contemporaneously or shortly after the filing of the underlying Motion to Dismiss, then I believe undoubtedly I would have dismissed the underlying case. But for a reason or reasons which are inexplicable at this time, this matter was not again brought to my attention until quite recently when the Final Report was filed. This case is, for a lack of better term, an unremarkable case in that, aside from this instant Motion, no activity presents itself on the docket other than the confirmation of a plan and its subsequent consummation. So here, on the threshold of closing a successful Chapter 13 case, the Debtors may, to their utter disappointment, find themselves losing their discharge. I note the Code does not require, in express language, an automatic dismissal of the case when the debtor does not comply with § 109(h) such as referenced in § 521(i)(1). "The Code's silence regarding the consequence for failing to comply with the prepetition credit counseling requirement contrast with other sections in the bankruptcy code that expressly provide for permissive, automatic, or mandated dismissal of an individual debtor's bankruptcy case." *In re Crawford*, 420 B.R. at 837. The *In re Fiorillo* case, *supra*, addresses what it calls the "developing approach" of bankruptcy courts retaining discretion to waive credit counseling requirements in limited circumstances or to find "substantial compliance sufficient to satisfy § 109(h)." See *In re Fiorillo*, 455 B.R. at 306. In that regard, the *Fiorillo* Court discusses the approaches taken by several courts such as *In re Manalad*, 360 B.R. 288 (Bkrtcy. S.D.Ca. 2007), which uses a three-part analysis to determine whether a deficiency under § 109(h) has been cured and *In re Hess*, 347 B.R. 489 (Bkrtcy. D.Vt. 2006), which applies a totality of the circumstances test to determine whether dismissal was appropriate. For purposes of this case alone, I do not intend to adopt any of the approaches that *In re Fiorillo* outlines. As such, proceedings in bankruptcy

court are inherently proceedings in equity. *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). I find it sufficient to utilize my authority under § 105 to excuse the technical non-compliance with § 109(h). At no time was the Debtors' good faith questioned in this case, and I simply cannot find that any party will be prejudiced by allowing this case to proceed to its logical conclusion. Therefore, based upon the foregoing, I will not dismiss the underlying case. I direct the Clerk to enter a Discharge and close the underlying case.

My Order will follow.

By the Court,

*[signature]*

Date: June 4, 2012

John J. Thomas, Bankruptcy Judge

(CMS)